**FILED**

AUG – 7 2024

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| | ) | |
| WILLIE ANN CLEVELAND, and | ) | **4:24-CR393-MTS/JSD** |
| TIMOTHY C. PEOPLES, | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

The Grand Jury charges that, at all times relevant to the Indictment:

## INTRODUCTION

1.      During their conspiracy outlined below, Defendant Willie Ann Cleveland and Defendant Timothy C. Peoples worked together to enrich themselves through illegal healthcare kickbacks. In doing so, Defendant Cleveland and Defendant Peoples conspired to send Medicare beneficiaries' specimen samples to laboratories so that the defendants could receive illegal kickbacks from those laboratories. In addition, Defendant Cleveland and Defendant Peoples offered to pay kickbacks to a practicing physician in exchange for the physician ordering lab tests on the specimen samples that the defendants referred to laboratories. The defendants undertook these unlawful actions to enrich themselves at the expense of the United States healthcare system.

2.      Defendant Cleveland resided within the Northern District of Alabama. During the conspiracy, Defendant Cleveland owned Family First Health Services, LLC, which was a company created to receive illegal kickbacks from laboratories.

3.     Defendant Peoples resided within the Eastern District of Missouri, and he was the owner of companies called Test Your Meds Today, LLC and MJM Marketing, both of which were created by Defendant Peoples to receive illegal kickbacks from laboratories.

### The Medicare Program

4.     The Medicare Program ("Medicare") was a federal healthcare program that provided benefits to individuals who were elderly or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

5.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f).

### COUNT ONE
**(Conspiracy to Receive and Pay Health Care Kickbacks: 18 U.S.C. § 371)**

6.     The paragraphs in this Indictment are incorporated by reference as though fully set forth herein.

7.     From in or about 2017 and continuing to on or about August 7, 2024, in the Eastern District of Missouri, and elsewhere,

**WILLIE ANN CLEVELAND and TIMOTHY C. PEOPLES,**

the defendants herein, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together, and with each other, to commit offenses against the United States, that is, to knowingly and willfully solicit, receive, offer, and pay remuneration

(including any kickback, bribe, or rebate) directly and indirectly, overtly and covertly, in cash and in kind in return for and to induce a person to refer, recommend, furnish, and arrange for the furnishing, ordering, purchasing, and leasing of any item and service, paid in whole or part under a federal health care program, in violation of 42 U.S.C. §§ 1320a-7b(b)(l) and (2).

## Purpose of the Conspiracy

8.     It was the purpose of the conspiracy for Defendant Cleveland and Defendant Peoples to unlawfully enrich themselves by, among other things, soliciting and receiving kickbacks in exchange for the provision of Medicare beneficiaries' specimen samples to laboratories so that the laboratories could bill Medicare for testing those specimen samples.

## Manner and Means of the Conspiracy

9.     The conspiracy to violate the Anti-Kickback Statute was carried out by the defendants in the following manner:

I.     **Defendant Cleveland and Defendant Peoples worked together to provide Medicare beneficiaries' specimen samples to laboratories so that the defendants could receive illegal kickbacks from those laboratories.**

10.     During the conspiracy, Defendant Peoples—who has no formal medical training or education—collected biological specimen samples for genetic and Covid-19 testing from Medicare beneficiaries in the Eastern District of Missouri. To ensure that laboratories could bill Medicare for testing the specimen samples that he collected, Defendant Peoples typically collected his specimen samples at senior citizen centers located in the Eastern District of Missouri. The reason that Defendant Peoples collected the samples from Medicare beneficiaries was to receive illegal kickbacks from the laboratories that billed Medicare for running the genetic and Covid-19 tests on those samples.

11.     For her part in the conspiracy, Defendant Cleveland introduced Defendant Peoples to laboratories, including Laboratory I.D. Defendant Cleveland introduced Defendant Peoples to these laboratories—including Laboratory I.D.—so that Defendant Peoples could send the Medicare beneficiaries' specimen samples that he collected to the laboratories in exchange for illegal kickbacks from the laboratories. Defendant Cleveland made these introductions based on her agreement with Defendant Peoples that she would receive a percentage of the illegal kickbacks that the laboratories paid Defendant Peoples.

12.     As part of their conspiracy, Defendant Cleveland and Defendant Peoples actively concealed and misrepresented their kickback payments. In doing so, Defendant Cleveland and Defendant Peoples created and executed false and fraudulent contracts. Those sham contracts were drafted and designed to conceal and misrepresent the fact that Defendant Peoples was getting paid kickbacks for each specimen sample that he sent to laboratories. Instead of setting forth the illegal kickback arrangement, one sham contract stated that Defendant Peoples was to be paid a "monthly flat marketing fee." Defendant Peoples expressly acknowledged that he entered into sham contracts concealing his kickbacks during a telephone conversation on or about February 7, 2022, when Defendant Peoples said, "[y]ou are not supposed to put in a contract that you are paying a person per test . . . It's against the law to say that."

13.     Also as part of their conspiracy, Defendant Cleveland and Defendant Peoples lied to federal agents about their illegal kickback arrangement. During their interviews with federal agents, both defendants falsely claimed that Defendant Peoples was not paid for each biological specimen sample that he collected.

II.     **Defendant Cleveland and Defendant Peoples offered to pay illegal kickbacks to a practicing physician in exchange for the physician ordering lab tests on the specimen samples that the defendants referred to laboratories.**

14.     As part of their conspiracy, Defendant Cleveland and Defendant Peoples offered to pay illegal kickbacks to a practicing physician. The defendants offered to pay the kickbacks to the physician in exchange for the physician ordering lab tests on the specimen samples that the defendants referred to laboratories. According to the defendants' plan, they would receive more money in kickbacks from the laboratories if they secured orders from a physician for the lab tests that they referred to the laboratories. Equipped with the specimen samples and the physician's lab test orders, the laboratories could bill Medicare and pay kickbacks to the defendants.

15.     More specifically, on or about October 20, 2021, Defendant Cleveland told the practicing physician that the physician could expect to receive approximately $30,000.00 in illegal kickbacks in exchange for the physician ordering lab tests on the specimen samples that the defendants referred to laboratories.

16.     On or about January 3, 2022, Defendant Cleveland offered to pay the practicing physician an illegal kickback payment of $100 for every lab test that the physician ordered. On or about March 21, 2022, Defendant Peoples told the practicing physician that he agreed with Defendant Cleveland that the physician would be paid an illegal kickback payment of $100 for every lab test that the physician ordered.

17.     Not only did Defendant Cleveland offer to pay the practicing physician illegal kickbacks, but Defendant Cleveland also suggested that the physician could conceal and misrepresent the kickbacks by creating false and fraudulent invoices. More specifically, on or about March 29, 2022, Defendant Cleveland suggested that sham invoices could be created that

disguised her illegal kickback payments to the physician as payments for training, outreach, education, or travel expenses. According to Defendant Cleveland, creating the sham invoices would make the payments from her appear as if they were not a "kickback."

18. Also as part of their conspiracy, Defendant Cleveland and Defendant Peoples lied to federal agents about their offers to pay the practicing physician illegal kickbacks.

## Overt Acts

19. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Eastern District of Missouri:

20. On or about March 4, 2022, Defendant Cleveland wired an illegal kickback payment of $7,000 to Defendant Peoples. Three days earlier, Defendant Cleveland received a $9,000 kickback payment from Laboratory I.D.

21. On or about June 22, 2023, Defendant Peoples lied to a federal agent during his interview about his illegal kickback payments. During that interview, Defendant Peoples falsely claimed that he was not paid for each biological specimen sample that he collected.

22. On or about October 19, 2023, Defendant Cleveland lied to a federal agent during her interview about the kickback conspiracy. During that interview, Defendant Cleveland falsely claimed that she did not offer the practicing physician $100 for every lab test that the physician ordered.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1.      Pursuant to Title 18, United States Code, Sections 982(a)(7), upon conviction of an offense in violation of Title 42, United States Code, Section 1320a-7b, including conspiracy to commit that offense, as set forth in Count One, the defendants shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offense.

2.      If any of the property described above, as a result of any act or omission of the defendant:

    a.      cannot be located upon the exercise of due diligence;
    b.      has been transferred or sold to, or deposited with, a third party;
    c.      has been placed beyond the jurisdiction of the court;
    d.      has been substantially diminished in value; or
    e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

                                                                A TRUE BILL.

                                                                _____
                                                                FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
DEREK J. WISEMAN #67257MO
Assistant United States Attorney

7